

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
HOT STITCH, LLC

              Plaintiff,

-against-

ASHLEY STEWART, LTD.,
URBAN BRANDS, INC. and
ETHAN SHAPIRO,

              Defendants,
-----------------------------------------------------------x

08 CV -

COMPLAINT



      Plaintiff, HOT STITCH, LLC, ("Hot Stitch"), by its undersigned attorneys, Ballon Stoll Bader & Nadler, P.C., complaining of the Defendants, states and alleges as follows:

## THIS ACTION

      1.    Hot Stitch brings this action to recover $185,324.00 as the purchase price due on account of *Ashley Stewart*® branded jeans which were manufactured, sold and delivered by Hot Stitch to defendant Ashley Stewart, Ltd. ("Ashley") in conformity with Ashley's orders. In addition, and of critical, immediate concern, Hot Stitch is in possession of approximately 26,712 additional pairs of *Ashley Stewart*® branded jeans (the "Inventory") produced pursuant to Ashley's orders and which have an estimated invoice value of $253,764.00. Ashley maliciously refuses to take delivery of, or pay for, the Inventory. Hot Stitch therefore seeks to mitigate its damages by selling the Inventory directly to retailers. The intervention of the Court is necessary, however, to protect Hot Stitch from potential infringement claims.

## THE PARTIES

2.  Hot Stitch is a New York limited liability company organized in May 2007 with its principal place of business at 1407 Broadway, Suite 1208, New York, New York. Hot Stitch, operates as a manufacturer, importer and wholesale distributor of women's, misses' and junior apparel under the trade name "Just Ernie."

3.  Hot Stitch has eight employees and monthly operating costs of approximately $80,000. One of those employees, Samuel Mesrie ("Sammy"), is the Managing Member and Chief Executive Officer of Hot Stitch. Sammy's responsibilities include oversight of Hot Stitch's business and day-to-day operations.

4.  Upon information and belief, Defendant Ashley Stewart, Ltd. ("Ashley") owns and operates a chain of specialty retail clothing stores engaged in the retail sale of *Ashley Stewart*® branded apparel. Ashley operates under brand management umbrella of Urban Brands, Inc. ("Urban"), the registered owner of trademarks incorporating the *Ashley Stewart*® name. Ashley is, upon information and belief, a licensee of Urban. *Ashley Stewart*® branded apparel is sold by Ashley through approximately 200 retail stores located in urban areas throughout the United States and its territories, and via Urban's website.

5.  Upon information and belief, Ashley and Urban are Delaware corporations which share a principle place of business at 100 Metro Way, Secaucus, New Jersey 07094 and a CEO, defendant Ethan Shapiro ("Shapiro").

6.  Upon information and belief, Urban employs approximately 2000 individuals at its New Jersey location and has annual sales of approximately $100-124.9 million.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the subject matter of the Complaint pursuant to **28 USC §§1332**, since the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of the State of New York, as Plaintiff LLC as well as the citizenship of every one of its members, and of the States of Delaware and New Jersey, as Defendants.

8. This Court also has jurisdiction over the subject matter of the Complaint since the Plaintiff seeks declaratory relief (**28 U.S.C.A. § 2201**) with respect to trademark rights to which the provisions of the Lanham Act, **15 U.S.C.A. § 1051** *et seq.*, are applicable

9. A substantial portion of the events or omissions giving rise to Hot Stitch's claims occurred in the Southern District of New York. Venue is therefore proper in this district pursuant to **28 U.S.C. § 1391**.

## BACKGROUND FACTS

### *The Branded Products*

10. In or around Spring 2007, Ashley identified Hot Stitch as a potential supplier of imported denim garments to be sold under the *Ashley Stewart*® brand. The *Ashley Stewart*® branded denim garments which were to be produced by Hot Stitch included various styles of denim jackets, skirts, trousers and pants. Among the pants styles were Ashley's "5-Pocket" line consisting of:

- "5-Pocket Straight Leg Jeans" (the "Jeans") in black (Style 4100) and in blue (Style 4101) at a negotiated price of $9.50 per unit (*i.e.* pair of jeans),

- "5-Pocket Slit Bottom Capris" (the "Capris") in blue/black (Style 4102-40) and black (Style 4102-01) at a negotiated price of $9.00 per unit and

- "5-Pocket Bermudas" (the "Shorts") in blue/black (Style 4108-40) and black (Style 4108-01) at a negotiated price of $8.50/unit.

The sizes were to range from women/misses 12 through 26, with additional inseam sizing for the Jeans.

11.  Upon information and belief, the regular retail prices established by Ashley for the foregoing styles were $24.00 per pair of Shorts and $29.00 per pair of Jeans or Capris.

### *The Orders and Production Process*

12.  Ashley placed its first order with Hot Stitch in May 2007 for June delivery of 4304 pairs of Jeans.

13.  Hot Stitch's protocol following acceptance of an order from Ashley involved taking all steps necessary to (a) produce jeans in overseas factories to Ashley's specifications, (b) import quantities necessary to fill Ashley's orders, (c) embellish each garment with an embroidered *Ashley Stewart*® mark, (d) affix *Ashley Stewart*® brand hang tags and labels to each garment and (e) invoice and ship the finished, embellished and labeled garments to Ashley for distribution to its retail outlets. The production and importation aspects of this protocol account for the bulk of the necessary out-of-pocket expense.

14.  From May 2007 and September 2007, Hot Stitched accepted and completed orders for which Ashley was invoiced $ 770,648.00 for 74,243 "5-Pocket" units and $441,236 for 38,836 units of jackets, skirts, trousers and pants.

### *Credit Factoring and International Trade Transactions*

15. Consistent with standard industry practice, Hot Stitch maintains a Factoring Agreement with a financial institution whereby Hot Stitch's customer orders are accepted only after being approved by their Factor. The Factor's approval operates as a guaranty of payment and also qualifies Hot Stitch for a monetary advance against their receivables, thereby providing necessary production capital to Hot Stitch.

16. A transaction is only completed, and the purchase order processed, if the Factor approves the purchaser's credit. Upon approving the purchaser's credit, the Factor assumes the seller's credit risk, taking over responsibility for banking, debt collection services and underwriting all other business related to open account credit terms.

17. Through September 2007, all of Ashley's purchase orders to Hot Stitch were accepted by Hot Stitch's Factor. As such, Hot Stitch received full payment for all of the garments produced and delivered pursuant to those orders.

### *Ashley's Accommodation Request*

18. In or around October 2007, Shapiro approached Hot Stitch and requested a financing arrangement for Ashley which deviated from the standard industry practice of obtaining advance Factor approval   Instead, as an accommodation, Shapiro requested that Ashley's purchase orders be submitted for Factor approval and financing <u>after</u> the goods were produced in Asia and imported by Hot Stitch into the United States.

19. Shapiro represented to Hot Stitch that the accommodation would be viewed as a personal favor and that it would assist Ashley's cash flow needs on an immediate basis. Shapiro also reminded Hot Stitch of the stellar credit track record demonstrated by Ashley in its business dealings with Hot Stitch to date.

20. Shapiro concealed from Hot Stitch the material fact that, due to business reversals, Ashley was not likely to qualify for credit approval by the Factor. Therefore, had Hot Stitch requested Factor approval and financing prior to acceptance of the order, financing would have been denied. Hot Stitch could have then either rejected the order or insisted upon adequate collateralization of the order.

21. Shapiro, however, successfully induced Hot Stitch to finance Ashley's orders, at least until the goods arrived in the United States. Hot Stitch relied upon Shapiro's representation and agreed to accommodate Ashley in exchange for Ashley's commitment to take delivery of all goods ordered and produced and for submission of the orders for Factor approval on net 45-day terms.

22. Upon reaching this agreement, Ashley placed orders on October 3, 2007 for production of 36,920 pair of Jeans at the agreed price of $350,740.00. Ashley placed additional orders in October 2007 for 15,252 at the agreed upon price of $215,409. All of the October Orders were accepted by Hot Stitch without prior Factor approval so that production and importation of the October orders required cash outlays in excess of $550,000 on the part of Hot Stitch. The October Orders called for delivery beginning in late December 2007 and continuing through January 2008.

23. In November 2007, before the garments being produced pursuant to the October Orders arrived through U.S. Customs, Ashley placed orders with Hot Stitch for 19,608 Shorts and Capris, at the agreed upon price of $170,808, all of which were accepted by Hot Stitch without prior Factor approval. Production of these garments brought Hot Stitch's out-of-pocket exposure at or above $650,000.

24. Nevertheless, Hot Stitch performed under its accommodation agreement, and caused the garments to be produced and imported.

25. Once the goods began to arrive and were processed through U.S. Customs at Hot Stitch's expense, Hot Stitch undertook the process of embellishing the garments with the *Ashley Stewart*® mark and affixing *Ashley Stewart*® brand hang tags and labels to each garment so that the goods could be shipped to Ashley for distribution to its retail outlets. Hot Stitch simultaneously submitted Ashley's orders to its Factor for credit approval.

26. Only then, having expended more than $650,000.00 for Ashley's benefit, did Hot Stitch discover that Ashley was no longer credit worthy and that Hot Stitch's Factor would not agree to finance Ashley's orders.

27. Having already been duped into investing extensive resources, including cash, into Ashley's products, Hot Stitch's options were limited. Hot Stitch reluctantly agreed to extend to Ashley an interest-free revolving credit line of $200,000 for the ongoing provision of goods. Under the terms of the agreement, Hot Stitch continued to finish and ship Ashley's goods but only to the extent that no more than $200,000 was outstanding for shipped product at any given time. Ashley also agreed to abide by 45-day credit terms with respect to each invoice issued by Hot Stitch.

28. Through January 2008, Ashley requested and accepted delivery of goods from Hot Stitch's accumulating inventory and paid for those goods, in full and on time. During January 2008, Hot Stitch accepted additional orders from Ashley for 5,040 Capris and Shorts and 3,600 other garments at a total agreed price of $78,984. Hot Stitch's investment in *Ashley Stewart*® branded garments was now at or exceeding $700,000.00.

29. In February 2008, Shapiro again approached Hot Stitch seeking modification of the credit agreement. This time, Shapiro requested that Hot Stitch increase the credit available to Ashley by $100,000, to $300,000. Hot Stitch reluctantly agreed.

### *Ashley's Breach of Contract*

30. Notwithstanding Hot Stitch's continued good faith efforts to accommodate Ashley and to preserve its own business, Ashley soon reneged on each of its agreements with Hot Stitch. By April 2008, Hot Stitch had expended over $800,000 on production of *Ashley Stewart*® branded garments. Ashley's orders had slowed to a near halt and Ashley was unable to meet the 45-day payment terms. Hot Stitch found that it was accumulating finished goods in inventory beyond their "cancel if not shipped by" dates with no assurance that Ashley would ever either take delivery of or pay for those goods.

31. In an effort to mitigate its damages, and avert financial collapse, Hot Stitch undertook to locate alternate channels of distribution for the Inventory. Hot Stitch's efforts, however, were undermined since it was not economically feasible to remove the embroidered *Ashley Stewart*® mark from the garments. Nor was it possible to remove the embroidered *Ashley Stewart*® mark without severely damaging each garment. In sum, removal of the embroidered *Ashley Stewart*® mark would likely increase rather than decrease Hot Stitch's damages.

32. Shapiro has stated to Hot Stitch that, notwithstanding Ashley's present inability and unwillingness to pay for the garments which Shapiro had implored Hot Stitch to produce, Ashley and Urban will not consent to any sale of the *Ashley Stewart*® branded goods in Hot Stitch's inventory to retailers other than Ashley.

33.   Hot Stitch is in direct and immediate jeopardy of failing as a business, threatening not only its member's capital but also the jobs and livelihood of eight employees who depend on Hot Stitch for their salaries.  <u>If Hot Stitch cannot sell the *Ashley Stewart*® branded goods in its possession, and collect its outstanding receivables, Hot Stitch will not survive</u>.

## COUNT I
### (Goods Sold and Delivered to Ashley)

34.   Between on or about October 3, 2007 and on or about June 4, 2008, at Ashley's specific instance and request, sold to Ashley goods manufactured to Ashley's order and specifications having the agreed upon and reasonable value of $439,088.00.

35.   Goods having the agreed value and price of $185,324.00 were delivered to and accepted by Ashley.  Payment therefore has been refused, despite demand.

36.   Hot Stitch stands ready, willing and able to deliver specially manufactured goods having the aggregate agreed value and price of $253,764.00, payment for and delivery of which were refused by Ashley.

37.   By virtue of the foregoing, Hot Stitch has been damaged in the amount of $439,088.00.

## COUNT II
### (Breach of Contract by Ashley)

38.   Plaintiff repeats and reiterates each and every allegation contained in paragraphs 1 through 37 of this Complaint as if fully set forth herein at length.

39.   As more fully described hereinabove, Hot Stitch and Ashley entered into a series of contracts governing the sale of goods by Hot Stitch to Ashley.

40. Ashley breached its contracts with Hot Stitch in that Ashley (a) failed and refused to pay the contract price of $439,088.00 and (b) failed and refused to accept delivery of *Ashley Stewart*® branded goods produced to Ashley's specifications.

41. Hot Stitch performed all conditions and obligations on its part in accordance with the contracts for sale of goods.

42. By virtue of the foregoing breach of contract, Hot Stitch has been damaged in the sum of $439,088.00.

## COUNT III
### (Common Law Fraud by Shapiro and Ashley)

43. Plaintiff repeats and reiterates each and every allegation contained in paragraphs 1 through 42 of this Complaint as if fully set forth herein at length.

44. The acts, representations, misrepresentations and concealments described in paragraphs 17 through 25 of this Complaint constitute the tort of fraud under the laws of the State of New York.

45. As a direct and proximate result of Shapiro's misrepresentations and omissions, Hot Stitch was induced to finance production of Ashley's goods, expending $800,000.00 to do so.

46. Had Hot Stitch known the truth, it would have refused Ashley's orders or would have arranged for adequate collateralization of Ashley's orders.

47. There is now due and owing to Hot Stitch the sum of $439,088.00 resulting from the foregoing fraud.

48. As a consequence of Shapiro's actions, Hot Stitch's credit and reputation were damaged and Hot Stitch was denied business opportunities which would have otherwise been available to it.

49. By virtue of the foregoing, Plaintiff has been damaged in amounts which are yet undetermined but which are reasonably believed to exceed the sum of $2,000,000.00.

### COUNT IV
### (Declaratory Judgment under 28 U.S.C. §2201 and 15 U.S.C. §1051 *et seq.* Regarding Disposition of Branded Garments)

50. Plaintiff repeats and reiterates each and every allegation contained in paragraphs 1 through 49 of this Complaint as if fully set forth herein at length.

51. Hot Stitch is in possession of Jeans which it duly manufactured for the account of Ashley but for which payment was not received.

52. Hot Stitch seeks to mitigate its damages by selling the Jeans and applying the proceeds of the sale to Ashley's account. However, doing so may violate the property rights of Urban and Ashley in and to the *Ashley Stewart*® mark.

53. A justiciable controversy exists between the Hot Stitch and the defendants concerning Hot Stitch's rights and obligations with respect to sale of *Ashley Stewart*® branded apparel in Hot Stitch's possession.

54. Hot Stitch seeks a Judgment declaring the parties' respective rights and obligations in and to the *Ashley Stewart*® branded apparel in Hot Stitch's possession. In particular, Hot Stitch seeks a Judgment declaring that, unless within 10 days thereof, Ashley fully pays for all *Ashley Stewart*® branded apparel in Hot Stitch's possession, Hot Stitch is granted a limited license for the sale of any *Ashley Stewart*® branded apparel produced by Hot Stitch pursuant to Ashley's order and remaining in its possession.

WHEREFORE, Hot Stitch demands judgment in its favor and against the

defendants as follows:

    A.    On Count I, awarding Hot Stitch monetary damages against defendant Ashley in the sum of $439,088.00, together with appropriate interest thereon computed.

    B.    On Count II, awarding Hot Stitch monetary damages against defendant Ashley in the sum of $439,088.00, together with appropriate interest thereon computed.

    C.    On Count III, awarding Hot Stitch monetary damages against defendants Ashley and Shapiro in the sum of $2,439,088.00, together with appropriate interest thereon computed.

    D.    On Count IV, a Judgment declaring the parties' respective rights and obligations in and to the *Ashley Stewart*® branded apparel in Hot Stitch's possession providing that, unless within 10 days thereof, Ashley fully pays for all *Ashley Stewart*® branded apparel in Hot Stitch's possession, Hot Stitch is granted a limited license for the sale of any *Ashley Stewart*® branded apparel produced by Hot Stitch pursuant to Ashley's order and remaining in its possession.

    E.    Awarding to Hot Stitch its costs and disbursements. .

    F.    Granting Hot Stitch such other and further relief as to the Court may seem just and proper.

Dated: New York, New York
       July 10, 2008

                            BALLON STOLL BADER & NADLER, P.C.

                            *Attorneys for Plaintiff*

                            By: _____
                              Vano Haroutunian (VH-1010   )
                            729 Seventh Avenue
                            New York, New York 10019
                            212-575-7900